MASTERANA, APPELLANT, *v.* CASHNER, APPELLEE.*

(No. 2848—Decided June 15, 1959.)

*Messrs. Mills & Mills*, for appellant.
*Mr. I. Bruce Hart*, for appellee.

McLAUGHLIN, J.   The parties herein are called plaintiff and defendant as in the trial court.   The automobile accident giving rise to this suit happened on the snowy wintry night of January 14, 1955, about 11 p. m., on 12th Street N. W., Canton, at the top of Serpentine Hill, near the Timken-Mercy Hospital entrance.

Defendant, 22 years old and single, was driving his father's

---

*Motion to certify the record overruled, December 16, 1959.

car. He had been to a stock car meeting and had picked up his girl friend at a bowling alley and was taking her home near Myers Lake. Serpentine Hill is a section of 12th Street N. W. which runs east and west across the Canton Park System. It is steep, with two banked curves, first to the right and then to the left, straightening out at the top. Defendant, driving west, slowed down to cross the railroad track at the bottom, then "hit the gas" and maintained a speed of about 25 miles per hour up the hill and around the banked curves. Upon entering the straightaway at the top, the car, which defendant was driving, skidded or slipped over across the center line and wrongfully on to his left lane and collided with the car in which plaintiff was riding as a passenger. When the car in which plaintiff was riding was hit it was going east about 10 miles per hour, on its own right side of the road, very close to its right curb. Plaintiff was injured and filed suit. The jury returned a verdict for the defendant. Plaintiff appeals on questions of law, assigning seven errors as follows:

"1. The trial court erred in his general charge to the jury by repetitiously and unnecessarily charging the plaintiff with the burden of proof, so as to prejudice plaintiff-appellant's evidence and case.

"2. The trial court erred in charging the jury on the proposition of unavoidable accident when the same did not arise or exist under the evidence of the defendant appellee in the case.

"3. The trial court erred in his charge to the jury in charging that the plaintiff appellant had the burden to prove proximate cause, when there was no issue of proximate cause in the lawsuit under the statements of counsel and the evidence.

"4. The trial court erroneously charged on unavoidable accident when the same was not proper in this cause, but even so, charged improperly and erroneously on the law of unavoidable accident.

"5. The finding of the jury and the judgment in favor of the defendant-appellee is contrary to law and against the weight of the evidence, and is not supported by any evidence.

"6. Error upon the part of the trial court in failing to direct a verdict in favor of the plaintiff-appellant and to leave the question of the amount of damages only for the jury's determination.

"7. Refusal on the part of the trial court to instruct the jury in his general charge that the burden of proving unavoidable accident was upon the defendant."

The first assignment of error is overruled. Plaintiff claims the trial court erred in its general charge to the jury by "repetitiously and unnecessarily charging plaintiff with the burden of proof." Such repetition did happen. We disapprove, but we cannot say that reversible error was thereby committed.

Assignments of error Nos. 2, 3, 4, 5, 6, and 7 concern the defense of unavoidable accident and are discussed together. This defense has had varied treatment by the Supreme Court. No clear guidepost rule has been established, and each pronouncement is applicable to the facts of each particular case.

In 1941, in the case of *Kohn, Admx.*, v. *B. F. Goodrich Co.*, 139 Ohio St., 141 at page 148, Williams, J., said:

"Unavoidable accident is not an affirmative defense but merely negatives negligence; consequently proof of such defensive matter may be given under a general denial. * * *"

The Supreme Court in 1943, in *Satterthwaite* v. *Morgan*, 141 Ohio St., 447, held in the second paragraph of the syllabus:

"2. An operator of a motor vehicle who has failed to comply with a safety statute regulating the operation of motor vehicles may excuse such failure and avoid the legal imputation of negligence arising therefrom by establishing that, without his fault and because of circumstances over which he had no control, compliance with the statute was rendered impossible."

The second paragraph of the syllabus of *Bush, Admr.*, v. *Harvey Transfer Co.*, 146 Ohio St., 657, is as follows:

"A legal excuse, precluding liability for injuries resulting from negligence *per se* in the failure to comply with a safety legislative enactment directing the manner of the operation of a motor vehicle on the public highways, must be something which makes it impossible to comply with the safety legislative enactment, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excuse or exception specifically provided in the enactment itself."

We desire to call attention to the statement in the *Bush case* at page 664 where it is stated that the rule of ordinary care, viz, "that '*he did or attempted to do what any reasonably prudent*

*person would have done under the same or similar circumstances'* " is no excuse. It must be something that would render it *impossible* to comply with the statute.

Recently (1956), in *Lehman* v. *Haynam,* 164 Ohio St., 595, the Supreme Court indicated that the burden of proof as to such defense (unforeseeable unconsciousness) rests upon the driver who seeks to thus excuse his negligence per se in driving his car upon the left half of the roadway and into another vehicle, and further that such driver has the burden to prove by the preponderance of the evidence such a situation.

"In our opinion, if one was guilty of what would be negligence as to a conscious person and claims not to have been negligent because of an unforeseen unconsciousness, he should have the burden of proving his condition by the preponderance of the evidence." (Page 600.)

While it is still true that the defense of unavoidable accident generally is nothing more than a denial of negligence and may be proved under a general denial, yet, in view of these late pronouncements of the Supreme Court, it is our considered opinion that the defense of unavoidable accident, when offered to excuse negligence per se, casts the burden of proof upon the defendant to establish that, without his fault and because of circumstances over which he had no control and which were not foreseeable, compliance with the statute was rendered impossible, and this by a preponderance of the evidence.

We have carefully read the short record herein to ascertain whether the facts justified the trial court in submitting the issue of unavoidable accident to the jury, and whether the issue was properly submitted and properly charged upon.

To begin with, from the record we determine that defendant's failure to drive his automobile upon the right half of the roadway amounted to a violation of Section 4511.25, Revised Code, and that he was, therefore, guilty of negligence per se which was the proximate cause of this accident. Defendant sought to *excuse* such failure and avoid this legal imputation of negligence *by establishing that,* without his fault and because of circumstances beyond his control, compliance with the statute was rendered impossible.

The testimony in the record shows that the car of defendant *skidded* or *slipped* across the center line onto the left half of the

roadway and there collided with the car in which plaintiff was a passenger; that there was fresh snow all the way up Serpentine Hill and the slipping or skidding started at a place where defendant's car was coming out of a banked curve and righting itself on to the straightaway; that at no time did defendant slacken his speed in rounding the two banked curves or entering the straightaway; and that there was ice on the road at the place where defendant's car stopped after such skidding and slipping, which was some 35 feet from the place where it started. The record does not show the presence of any ice at the place where the skidding or slipping started. Witnesses did testify as to the presence of ice or packed-down snow in the "area" of the accident. But defendant testified as follows:

"Q. Didn't you go back to where you started to skid or slide? A. No.

"Q. You don't know where you started to slide, since you didn't go back and look; you, therefore, don't know whether ice was there or not, do you? A. No."

Likewise, the testimony of the defendant is as follows:

"Q. But the road was covered snow? A. Yes, it was.

"Q. And you had driven up Serpentine Hill many times? A. Yes.

"Q. And knew it was a bad road in the winter time when there was snow on the road, isn't that true? A. Yes.

"Q. And you kept driving at the same rate of speed up that road all the way from the time you started up there until the time of this accident, isn't that true? A. Yes, approximately.

"Q. Without any slacking of speed at any time? A. Like I said yesterday, I don't know that.

"Q. You are not conscious of slacking your speed at any time as you started down west on Twelfth Street, went across the railroad tracks and started up the hill, you continued at the same speed to the best of your knowledge all the way? A. I slowed down at the railroad tracks.

"Q. And picked up speed again? A. Yes, I hit the gas again.

"Q. Was there any tracks in the snow ahead of you on the road? A. No, there weren't; not that I could see. I noticed that about it, because I figured they usually put something on Serpentine Hill the first thing.

"Q. There wasn't any tracks on the road? A. No, there wasn't anything there, no cinders or nothing.

"Q. You knew you were going up that road without any cinders or sand being placed on it by the Canton City Street Department? A. Right.

"Q. You know that road slopes to the left, does it not? A. The first one goes to the right.

"Q. When you get to the top, that curve slopes to the left? A. Yes, at the top.

"Q. You were just coming out of that curve when you started to slide? A. No, I was in the straight-a-way.

"Q. Going at the same speed you had gone around the curve? A. Approximately, yes.

"Q. Your headlights shining ahead? A. Yes.

"Q. 250 to 300 feet? A. Yes.

"Q. Right? A. Yes, approximately; I don't know exactly the number of feet.

"Q. And then you continued on until your car came over and the left front portion of your car struck the left front portion of the other car, is that right? A. Yes.

"Q. And after that collision, your car went on past the Roman car and turned around? A. Yes.

"Q. Headed back the other way? A. Yes.

"Q. What period, or what distance in feet were you sliding or skidding? A. I would say around thirty, thirty-five feet.

"Q. Up to the point that you hit the car? A. Yes."

In view of this testimony of the defendant himself, it is apparent that there was no showing that there was ice where the defendant claimed he started to skid and that therefore he did not "establish" that the skidding was unavoidable. The record is devoid of any evidence that the condition of the road was any different at the place where defendant claimed he started to skid than it was all the way up Serpentine Hill.

It is, therefore, our opinion that the trial court should have directed a verdict in favor of plaintiff, leaving only the amount of damages for the jury. Of course, defendant contends contra. Even so, the court should have more fully charged the jury that once negligence per se had been established the burden of proof is changed and is cast upon the defendant to show by a preponderance of the evidence that the accident was unavoidable.

Even then the verdict was against the manifest weight of the evidence, because in our opinion the defendant did not present any evidence tending to establish an excuse for his negligence per se.

In view of our holdings herein, assignments of error Nos. 2, 3, 4, 5, 6 and 7 are all sustained.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

PUTNAM, P. J., concurring. I have before me the majority opinion by Judge McLaughlin, in which I concur, and the dissenting opinion of Judge McClintock. I write this to clarify my position on the dissenting opinion, in view of what I consider an indefinite statement in the majority opinion.

I realize that this case cannot be reversed on the weight of the evidence without the concurrence of all three judges. Certain statements in the majority opinion would lead to the conclusion that this case was reversed, among other grounds, on the weight of the evidence. However, a study of that opinion should and does reveal that the case was reversed, among other grounds, upon the proposition that there was no sufficient evidence under the law to submit to the jury the proposition of an unavoidable accident or to excuse in any manner the defendant being on the wrong side of the road, which was negligence per se under the statute.

McCLINTOCK, J., dissenting. This was originally an appeal on questions of law and fact. However, counsel filed briefs and bill of exceptions and treated it as an appeal on questions of law, and in this opinion I will so consider it. I will refer to the parties in this opinion as they were designated in the court below, to wit, Rose Masterana, plaintiff, and Thomas D. Cashner, defendant.

Plaintiff filed her petition in the Common Pleas Court and alleged that on the night of January 14, 1955, she was riding as a passenger in the front seat of an automobile traveling in an easterly direction on 12th Street N. W., and the defendant was driving his automobile in a westerly direction on 12th Street N. W., and without any signal or warning he caused his auto-

mobile to be driven and operated from the westbound lane of travel over into the eastbound lane of travel, causing a collision; and plaintiff alleged negligence on the part of the defendant. Plaintiff further says that by reason of the two car collision she suffered injuries and suffered headaches, and she prayed for damages in the sum of $25,495.20.

To this petition the defendant filed an answer and denies that the collision and any resulting injuries to plaintiff were due to any negligence on his part, and he says that the collision was the result of an unavoidable accident and was no fault of his.

Thereafter the cause came on for hearing before the court and jury, and the jury rendered a verdict in favor of the defendant, all twelve jurors signing the verdict. Thereafter, plaintiff · appealed to this court and for her assignments of error says:

"1. The trial court erred in his general charge to the jury by repetitiously and unnecessarily charging the plaintiff with the burden of proof, so as to prejudice plaintiff-appellant's evidence and case.

"2. The trial court erred in charging the jury on the proposition of unavoidable accident when the same did not arise or exist under the evidence of the defendant appellee in the case.

"3. The trial court erred in his charge to the jury in charging that the plaintiff appellant had the burden to prove proximate cause, when there was no issue of proximate cause in the lawsuit under the statements of counsel and the evidence.

"4. The trial court erroneously charged on unavoidable accident when the same was not proper in this cause, but even so, charged improperly and erroneously on the law of unavoidable accident.

"5. The finding of the jury and the judgment in favor of the defendant-appellee is contrary to law and against the weight of the evidence, and is not supported by any evidence.

"6. Error upon the part of the trial court in failing to direct a verdict in favor of the plaintiff-appellant and to leave the question of the amount of damages only for the jury's determination.

"7. Refusal on the part of the trial court to instruct the jury in his general charge that the burden of proving unavoidable accident was upon the defendant."

The evidence in this case briefly is as follows: Serpentine

Road in Canton is an extension of 12th Street N. W., and on the evening of January 14, 1955, the defendant had left his place of business, driving to a meeting which he attended, and later, at about 11 p. m., he picked up his young lady friend at the Canton Recreation Bowling Alley located at 12th and Market Streets. At no time as he drove in the city did he notice any slippery condition on the streets, and he stopped for numerous traffic lights. There was some snow on the ground and he was traveling at a speed of from 20 to 25 miles per hour up the hill on Serpentine Road and had reached the straight portion of the highway at the top of the hill, when suddenly and without warning his car went into a skid. He applied his brakes and attempted to turn his front wheels in the direction of the skid, without success, and his car unavoidably and unexpectedly drifted to the left and came in contact with the car in which the plaintiff was riding. There is no evidence of negligence in the record on the part of the defendant. He simply slipped at the top of this hill, got on the wrong side of the road, and collided with plaintiff's car. When he got out of the car he almost fell down.

A motion to direct a verdict in favor of the defendant was filed by the defendant at the close of the plaintiff's case and also at the close of all the testimony. On this question, I cite *Wilkeson, Admr.,* v. *Erskine & Son, Inc.,* 145 Ohio St., 218:

"1. Where defendant's motion to direct a verdict in its favor made at the close of plaintiff's evidence is overruled and defendant thereafter proceeds to introduce evidence, any error in the overruling of such motion is thereby waived. (*Halkias* v. *Wilkoff Co.,* 141 Ohio St., 139, approved and followed.)

"2. Where a defendant, at the close of all the evidence, moves the court to direct a verdict in its favor, the plaintiff is entitled to have the evidence construed most strongly in his favor. (*Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, approved and followed.)"

Defendant therefore waived his right to a directed verdict.

I will now consider the assignments of error of plaintiff. As to the first assignment of error, the majority opinion concedes that the same is not well taken, and the court below so held, so I will not give that assignment of error any further consideration.

As to the second assignment of error, there was evidence in the record that this was an unavoidable accident, and the burden remained with the plaintiff. On this question I cite Blashfield's Cyclopedia of Automobile Law and Practice, page 130, Section 9C, as follows:

"The issue of unavoidable accident need not be interposed by special plea, but may be raised by the evidence. Since accident, in the very nature of things, precludes negligence as the proximate cause of any injury, proof of negligence of itself negatives accident. So if an injury sued for is caused by the negligence of either or both parties, it would not be from an unavoidable accident. That question should be submitted to the jury in such a manner as to place the burden of proving the negative thereon on the plaintiff."

Also, I cite *Uncapher* v. *The Baltimore & Ohio Rd. Co.*, 127 Ohio St., 351, as follows:

"1. The Supreme Court of Ohio is not obligated to search the record for error that is not indicated in the brief or oral argument of counsel for the complaining party, notwithstanding the assignments contained in the petition in error.

"2. Unavoidable accident occurs only when the disaster happens from natural causes, without negligence or fault on either side.

"3. The plea of unavoidable accident is diametrically opposed to the theory of negligence in any form.

"4. The term 'accidental' is ordinarily a legal conclusion at best, but when used to qualify the discharge of a shotgun a good plea is thereby made. (*Davison* v. *Flowers*, 123 Ohio St., 89, distinguished.)"

And, also, on page 358 of the *Uncapher case* the following appears:

" 'Inevitable accident' is defined by the same author as any accident which cannot be foreseen and prevented. This definition was adopted from *Trent & Mersey Navigation Co.* v. *Wood*, 4 Doug., 287, 290, opinion by Lord Mansfield; *McArthur & Hurlbert* v. *Sears*, 21 Wend. (N. Y.), 190, 198; *Fish* v. *Chapman & Ross*, 2 Ga., 349, 46 Am. Dec., 393.

"There is a more succinct definition, namely: An unavoidable accident is such an occurrence or happening as, under all the attendant circumstances and conditions, could not have been

foreseen or anticipated in the exercise of ordinary care as the proximate cause of injury by any of the parties concerned.

"Can there be an unavoidable accident when one of the parties is negligent? Most certainly not.

"Inevitable accident occurs 'only when the disaster happens from natural causes, without negligence or fault on either side, and when both parties have endeavored, by every means in their power, with due care and caution, and with a proper display of nautical skill, to prevent the occurrence of the accident.' *Sampson* v. *United States*, 12 Ct. Cl., 480, 491; *Union Steamship Co.* v. *New York & Virginia Steamship Co.*, 65 U. S. (24 How.), 307, 16 L. Ed., 699."

Counsel for plaintiff cite the case of *Lehman* v. *Haynam*, 164 Ohio St., 595. That case involved a "black-out," and there is a vast difference between a "black-out" and an unavoidable accident. As I have heretofore said, there is evidence in the record that there was no negligence on the part of the defendant whatsoever. He was not exceeding the speed limit, and he slipped on the ice and got on the wrong side of the road. In my opinion that is an unavoidable accident. While there is some evidence of the plaintiff to the contrary, the jury had the opportunity of seeing the witnesses and observing them on the witness stand, and their judgment is not contrary to the weight and sufficiency of the evidence.

Most of the evidence cited in the majority opinion was evidence given by the plaintiff. However, as I have heretofore stated, the jury heard the evidence in support of the defendant's claim, as I have heretofore outlined.

Since I am dissenting from the majority rule, I cite Section 6, Article IV of the Constitution of Ohio, which reads, in part, as follows:

"No judgment of any court of record entered on the verdict of the jury shall be set aside or reversed on the weight of the evidence except by the concurrence of all three judges of a Court of Appeals."

That provision of the Constitution disposes of assignment of error No. 5, and it is my opinion that such assignment of error is not well taken.

On the questions involved, see *State, ex rel. Squire, Supt. of Banks,* v. *City of Cleveland*, 150 Ohio St., 303, the eighth paragraph of the syllabus of which reads as follows:

"8. Where the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn therefrom, both the trial court and the Court of Appeals are authorized and required upon motion to weigh the evidence, but in such a situation the Court of Appeals on an appeal on questions of law cannot as a matter of law find the facts otherwise than as found by the trier of the facts. *In such a situation the sole function of the Court of Appeals is to weigh the evidence and either affirm the finding of the trier of the facts or, if such finding be against the weight of the evidence, set it aside and remand for a new trial.*" (Emphasis added.)

And, on page 348, the following appears:

"The Court of Appeals had the authority to reverse the judgment of the trial court on the ground that the judgment is 'against the weight of the evidence.' This was done. However, a final judgment was rendered by the Court of Appeals and this it was without authority to do inasmuch as a remand to the trial court is necessary when the Court of Appeals reverses a judgment as against the weight of the evidence. This court reverses the judgment of the Court of Appeals and remands the case to the Common Pleas Court for a retrial, which the Court of Appeals under its finding was required to do."

In conclusion, in view of the evidence submitted to a jury and the court, who had the opportunity of seeing the witnesses and observing their demeanor on the witness stand, and the fact that the jurors were unanimous in their decision in favor of the defendant, to me it is preposterous to set this judgment aside; and, for the reasons herein stated, I am of the opinion that none of the assignments of error of the plaintiff is well taken, and that the judgment of the Court of Common Pleas should be affirmed.

(Decided July 10, 1959.)

ON APPLICATION for rehearing.

*Per Curiam.* This cause is before this court on an application for a rehearing of a decision reversing the judgment below in favor of the defendant and remanding the cause for a new trial. The decision is characterized by the appellee and dissenting judge as "preposterous" and as being contrary to decisions of the Supreme Court. These decisions have already

been argued in briefs and commented on in opinions, both majority and dissenting. No new authorities have been cited.

Perhaps the appellee and the dissenting judge are somewhat confused as to what the record contains and what the majority opinion does say and does not say. It seems to us that more heat than logic has been presented.

To illustrate the record: In the dissenting opinion it is stated: "Most of the evidence cited in the majority opinion was evidence given by the plaintiff * * *." Let it here be pointed out that all the evidence cited in that opinion was evidence of the defendant on cross-examination.

Again, in the dissenting opinion it is stated: "A motion to direct a verdict in favor of the defendant was filed by the defendant at the close of the plaintiff's case and also at the close of all the testimony." There follows citation of authority and the conclusion that "defendant therefore waives his right to a directed verdict." This causes one to wonder whether the judge is under the impression that the defendant is appealing this case. Of course, the fact is, that assignment of error No. 6 was under discussion, which was the refusal of the court to grant the *plaintiff's motion* to direct a verdict at the close of all the testimony.

Perhaps it is well to state what the majority opinion holds and what it does not hold.

In the first place, as has been heretofore pointed out, the reversal is not in part on the weight of the evidence. The majority is not so naive as to think that this can be done by two judges. It is that there is no sufficient evidence in the record to sustain a determination of unavoidable accident. There is not a conflict of evidence which this court weighs but this is based on the defendant's own testimony. No constitutional limitation applies here.

In the second place we have not attempted to change the long established rule in Ohio that the defense of unavoidable accident is not an affirmative defense but may be interposed under a general denial. What we are saying is that, when this defense is interposed and the evidence conclusively shows that the defendant is prima facie guilty of negligence per se which was the proximate cause of the injury, the burden of proof is upon him to show that his violation of the statute was due to

events unforeseeable, acts of God or other causes over which he had no control and which rendered it impossible for him to have avoided the injury. And we conclude in this case that the defendant, knowing the condition of this snowy road, had a duty to be in such control of his automobile that it did not skid to the wrong side of the road. The skidding was a foreseeable circumstance under such conditions.

In the final analysis the difference in the position of the appellee and this court is the interpretation of two cases, viz, *Kohn, Admx., v. B. F. Goodrich Co.*, 139 Ohio St., 141, and *Lehman v. Haynam*, 164 Ohio St., 595. The appellee relies upon certain language in the opinion, not the syllabus, in the former case, and our position is based on the third paragraph of the syllabus of the latter, with its supporting argument. If there is conflict in the two cases, and we don't think there is, the *Lehman case* being a later pronouncement must control. This case is brushed off by the appellee with the statement that it is a blackout case. This does not meet the issue. The fundamental and underlying principle is the *foreseeableness* of either the blackout or the skidding or whatever causes the prima facie negligence. If one has any reason to anticipate the occurrence he is not excused.

We think that this not only is the law but that it should be. In this day and age of heavy automobile and truck traffic, if the drivers thereof so manage their vehicles on wet, snowy and slippery roads, which are well known to them, so that they skid across the center line and smash up innocent occupants of other automobiles obeying the law, and can then escape liability by claiming an inevitable accident, this court wants no part of such pronouncement.

The application for a rehearing is denied.

*Application denied.*

Putnam, P. J., and McLaughlin, J., concur.